

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**                    April 24, 1959

Mr. William A. Harrison                    Opinion No. WW-601
Commissioner of Insurance
International Life Building                 Re: Whether or not commissions paid
Austin, Texas                                   to directors on the sale of capital
                                                stock is prohibited by Article
Dear Sir:                                        3.67 of the Insurance Code.

     You have requested the opinion of this office on the question of "whether the taking of a commission by an officer or director of a life insurance company operating under the provisions of Chapter 3, Texas Insurance Code, on sales of original issue capital stock of such company made personally by such officer or director violates the provisions of Article 3.67, Texas Insurance Code."

     Article 3.67 reads as follows:

> "No director or officer of any insurance company transacting business in or organized under the laws of this State, shall receive any money or valuable thing for negotiating, procuring, recommending or aiding in any purchase or sale by such company of any property, or any loan from such company, nor be pecuniarily interested, either as principal, co-principal, agent or beneficiary in any such purchase, sale or loan. Nothing in this article shall prevent a life insurance corporation from making a loan upon a policy held therein, by the borrower, not in excess of the reserve value thereof."

It is our opinion that the taking of a commission by a director for sales of original issue capital stock falls within the prohibition of Article 3.67.

     The argument has been made that inasmuch as stock does not become property until after the purchase has been made and a stock certificate issued, a commission on the sale would not be a violation of Article 3.67. As stated in Volume 11, Fletcher Cyclopedia of Corporations, page 34:

> "Stock can be created only by contract, whether it be in the simple form of a subscription or in any other mode. There must be an agreement to take the stock, and nothing short of this can create it. This imparts to the stock the quality of property which before it did not possess."

It should be remembered, however, that Article 3.67 by its own terms not only prohibits the taking of a commission for the sale itself but for "negotiating, procuring, recommending or aiding" in such sale. It is obvious that the "agreement to take the stock" will have been preceded by negotiations, no matter how limited or cursory, hence any commission received as a result of such a sale would necessarily include compensation for the negotiations leading to its consummation. It is equally obvious that the commission is in fact paid for the person's activities in negotiating, recommending, procuring and aiding in the obtaining of the subscription agreement.

It has also been argued that if Article 3.67 is construed to prohibit a director or an officer of an insurance company of the kind in question from receiving a commission on the sale of original issue capital stock of such company, the same article by the same reasoning would prohibit the director from being pecuniarily interested as principal in the purchase of any such property sold by such company and hence would be prohibited from purchasing stock in the company even though such director is required by Article 3.04, Section 4, to be a stockholder. This, of course, would be a ridiculous result but, in view of Article 3.14, one that does not follow. This article, also passed in 1909, expressly exempts the directors' dealings with the insurance company as a shareholder from the general prohibitions relating to directors' activities. It provides:

> "Any director, member of a committee, or officer, or any clerk of a 'domestic' company, who is charged with the duty of handling or investing its funds, shall not deposit or invest such funds, except in the corporate name of such company; shall not borrow the funds of such company; shall not be interested in any way in any loan, pledge, security, or property of such company, except as stockholder; shall not take or receive to his own use any fee, brokerage, commission, gift or other consideration for, or on account of, a loan made by or on behalf of such company."

The conclusion we have reached is in accordance with an Attorney General opinion dated August 3, 1911, to the Commissioner of Insurance and Banking which held that a contract whereby the president of an insurance company was to receive a 25% commission for the sale of unsold capital stock was unlawful by virtue of this article.

We do not pass upon any penal laws covering this or similar fact situations since the rules for construing civil and penal statutes are different.

## SUMMARY

Commissions paid to directors on the
sale of capital stock are prohibited by
Article 3.67 of the Insurance Code.

Very truly yours,

WILL WILSON
Attorney General of Texas

By
R. V. Loftin, Jr.
Assistant

RVL:lm

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

William R. Hemphill
Tom I. McFarling
John Reeves

REVIEWED FOR THE ATTORNEY GENERAL
BY:
Morgan Nesbitt